# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | |
|---|---|
| MARIE SZEROKMAN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GRAHAM HEALTHCARE & REHABILITATION CENTER<br><br>　　　　　　Defendant. | Civil Action: 1:25-cv-00097<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff MARIE SZEROKMAN ("Plaintiff"), by her attorneys, CONSUMER JUSTICE LAW FIRM, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), and seeks damages to redress the injuries she suffered as a result of being discriminated against based on her actual and/or perceived disability and terminated from her employment due to her actual and/or perceived disability after requesting reasonable accommodations.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12101 and 28 U.S.C. § 1331.

3. Venue is proper in this Court under 28 U.S.C. § 1391 (a) and (b) because "a substantial part of the events or omissions giving rise to the claim" occurred within the Western

District of North Carolina, Defendant has a location and employees within this District and Defendant conducts substantial and not isolated business within the Western District of North Carolina.

4. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around November 6, 2024 against GRAHAM HEALTHCARE AND REHABILITATION CENTER; (b) receiving a Notice of Right to Sue from the EEOC on January 6, 2025; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

5. Plaintiff is a resident of the State of North Carolina, County of Graham.

6. At all relevant times, Plaintiff was employed at Defendant's North Carolina location, located at 811 Snowbird Road, Robbinsville, NC 28771.

7. Upon information and belief, GRAHAM HEALTHCARE AND REHABILITATION CENTER (hereinafter referred to as "GRAHAM") is a domestic business corporation duly existing by the virtue and laws of the State of North Carolina, that does business in the State of North Carolina.

8. Upon information and belief, Defendant GRAHAM employs fifteen or more employees.

9. Defendant GRAHAM is an "employer" within the meaning of the ADA and is located within the jurisdiction of this Court.

## STATEMENT OF FACTS

10. Plaintiff was employed as an evening cook at Defendant's nursing home from in or around March 2015 until in or around May 2024.

11. At all relevant times, the Plaintiff was a satisfactory employee and was qualified to perform the duties and functions of her employment.

12. On January 4, 2024, Plaintiff exercised her right to take leave under the FMLA for a total knee replacement surgery.

13. Following her surgery, Plaintiff participated in physical therapy with Plaintiff's physical therapist, Sharon Arnold ("Arnold").

14. As part of Plaintiff's physical therapy, Arnold required Plaintiff to use a cane to normalize her gait.

15. On March 20, 2024, Plaintiff provided Defendant with a note from Arnold requiring Plaintiff to use a cane at work in order to ensure no harm to her rehabilitation.

16. Upon receiving said note, Defendant's employee, Tanya Kelly ("Kelly"), offered Plaintiff a personal leave, assuring Plaintiff that accepting said leave would not result in her termination, rather than considering granting Plaintiff's accommodation request.

17. Accordingly, Plaintiff accepted the proposed leave and continued to rehabilitate her knee.

18. Despite accepting Defendant's proposed leave, which Plaintiff indicated would be needed by Plaintiff until June 2024, Plaintiff received incessant harassment by Defendant inquiring as to when Plaintiff would be able to return to work.

19. On or around April 29, 2024, in a text message to Deborah Robinson ("Robinson"), Plaintiff's supervisor who reached out to Plaintiff about her return from leave, Plaintiff communicated the following:

    *"Hopefully, I can return the end of May still have therapy and that stupid cane*

    *Dr. said work on flexibility and work on getting rid of the cane …."*

20. On or around mid-May 2024, in response to an additional query from Robinson asking when the Plaintiff could return to work, the Plaintiff texted that it would be in early June:

    *"Robinson: Ok. So can you meet on Tuesday?*

    *Plaintiff: Yeah, where at? I can't start back [until] June.*

    *That's when I [should] be done with therapy 6-3"*

21. On or around May 10, 2024, Robinson again texted the Plaintiff the following;

    *"Do you not want to return to work at Graham?"*

22. On or around May 10, 2024, Plaintiff received the following texts from Robinson, in an effort to schedule a meeting between Robinson, Plaintiff, and a company administrator named Lacy Webster ("Webster"):

    *"Can you come in Tuesday at 11:00am to discuss when you can return to work?*

    *I've set up a visual meeting with Lacy. So I need for you to come in."*

23. Plaintiff agreed and the aforementioned meeting was set to take place on May 14, 2024.

24. During the May 14, 2024, meeting, Plaintiff informed both Robinson and Webster that her physical therapy was ending on May 31, 2024, and that she would be able to return to work on June 3, 2024.

25. Once Plaintiff's therapy concluded, Plaintiff explained, she would no longer need the cane.

26. Plaintiff was so committed to maintaining her employment that she continued to proactively communicate with Defendant while on medical leave, seeking any possible way to continue her employment, demonstrating her willingness to not inconvenience Defendant despite her own medical needs.

27. Initially, neither Robinson nor Webster responded to Plaintiff's update about her physical therapy ending on May 31, 2024.

28. Accordingly, the Defendant made it nearly impossible for Plaintiff to engage in a meaningful interactive dialogue.

29. On or around May 14, 2024, Plaintiff was ultimately informed that her employment was being terminated because she had exceeded her allotted number of days off.

30. It is clear from the temporal proximity of the Plaintiff's request for accommodation due to her injury and her termination that the reason to terminate the Plaintiff was discriminatory and/or retaliatory.

31. The Defendants did not engage, and have not engaged, the Plaintiff in any meaningful discussion regarding a reasonable accommodation for the Plaintiff that would enable the Plaintiff to continue her employment.

32. Rather than engaging in a meaningful interactive process, the Defendants terminated the Plaintiff.

33. At no time during Plaintiff's employment with Defendants did the Defendant ever issue the Plaintiff a warning or give negative feedback about her performance.

34. Rather, Defendant offered Plaintiff additional time to recover, guaranteeing her employment during her absence.
35. As such, Plaintiff has been unlawfully discriminated against on the basis of her actual and/or perceived disabilities.
36. Plaintiff was disabled within the meaning of the ADA and/or Defendant perceived Plaintiff to be disabled.
37. At all times relevant, Plaintiff's disability was a physical impairment which substantially limited one or more major life activities within the meaning of § 12102(1)(A) of the ADA.
38. Plaintiff requested accommodation for her disability which is neither unreasonable nor burdensome for Defendant.
39. Defendant's failure to engage in the interactive process, its refusal to accommodate Plaintiff, and its subsequent termination of her employment constitute violations of the ADA. These were acts of discrimination, and retaliation against Plaintiff based on her disability.
40. As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe emotional and physical distress, economic loss, and a permanent impact on her ability to maintain gainful employment and pursue a stable career.
41. Defendant was well aware of all of the above discriminatory actions that Plaintiff was being subjected to throughout her employment at Defendant GRAHAM.
42. Defendants acted intentionally and intended to harm the Plaintiff.

43. Defendant GRAHAM willingly ignored its obligations to provide accommodation and prevent discrimination in the workplace - to the detriment of Plaintiff.

44. Defendant GRAHAM's lack of action to help Plaintiff meant that Defendant GRAHAM was acquiescing to the discrimination.

45. Plaintiff was terminated because of her disability, and in retaliation for engaging in protected activities.

46. Defendant GRAHAM, its employees, agents, representatives, and/or subordinates had no good faith business justification for their individual and collective actions against Plaintiff.

47. As a result of the acts and conduct complained of herein, the Plaintiff has suffered a loss of employment, income, other compensation which such employment entails, special damages, and great inconvenience.

48. Defendant's actions and conduct were intentional, grossly negligent, and intended to harm Plaintiff.

49. The Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

50. Defendant unlawfully discriminated against, humiliated, degraded, and belittled the Plaintiff.

51. Plaintiff was stunned that she was being treated so harshly after nearly a decade of performing services for the Defendant.

52. The Plaintiff felt offended, disturbed, and humiliated by the blatantly unlawful, discriminatory termination.

53. The Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

54. As such, the Plaintiff demands injunctive relief against the Defendant.

55. As such, the Plaintiff demands punitive damages against Defendant.

### AS A FIRST CAUSE OF ACTION
### DISABILITY DISCRIMINATION IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT

56. Plaintiff restates each and every paragraph of this complaint as if it were fully restated herein.

57. Defendant treated Plaintiff differently than other similarly situated employees based on her perceived disability and/or physical impairment.

58. During Plaintiff's employment, Defendant denied Plaintiff's request for a meaningful discussion of her reasonable accommodation request.

59. Defendant's request for a meaningful discussion of her health was a request for reasonable accommodation.

60. Defendant failed to engage in an interactive process with Plaintiff to allow her to return from medical leave.

61. By failing to engage in an interactive process with Plaintiff, Defendant violated the ADA, which prohibits discrimination on the basis of disability, perceived disability, and perceived physical impairment.

62. In their discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

63. To remedy the violations of the rights of Plaintiff secured by the ADA, Plaintiff requests that the Court award her the relief prayed for below.

## AS A SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE ADA

64. Plaintiff restates each and every paragraph of this Complaint as if it were fully restated herein.

65. Pursuant to 42 U.S.C. § 12203, "No person shall discriminate against any individual because such individual opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

66. Plaintiff attempted to participate in the interactive process afforded to her by the ADA.

67. Plaintiff's request for a meaningful discussion constituted a request for reasonable accommodation.

68. A request for reasonable accommodation is a protected activity under the ADA.

69. Subsequent to Plaintiff's reasonable accommodation request, Defendant terminated her employment.

70. Defendant's actions were retaliatory in nature based on Plaintiff's request for reasonable accommodation.

71. As a result of Defendant's discrimination in violation of the ADA, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Plaintiff to injunctive and equitable monetary relief.

72. To remedy the violations of the rights of Plaintiff secured by the ADA, Plaintiff requests that the Court award her the relief demanded below.

## AS A THIRD CAUSE OF ACTION
## NORTH CAROLINA COMMON LAW
## (WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY)

73. The foregoing paragraphs are incorporated herein as if set forth in full.

74. The declared public policy of North Carolina prohibits discrimination in employment based on handicap. North Carolina Equal Employment Practices Act, N.C. Gen. Stat. Ann. § 143-422.1 et. al. ("NCEEPA").

75. Defendant discriminated against Plaintiff and terminated her for her actual disabilities, perceived disabilities, and/or record of disabilities.

76. Defendant's conduct constituted wrongful discharge in violation of North Carolina law and public policy. See *Egler v. Am. Airlines, Inc.*, No. 5:17-CV-73-FL, at *7 (E.D.N.C. Feb. 21, 2018) ("courts…have interpreted NCEEPA to provide a basis for a common law wrongful discharge claim based upon discrimination due to disability").

## JURY DEMAND

77. Plaintiff requests a jury trial on all issues to be tried.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Rodriguez claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Dated: April 4, 2025

*/s/Dawn McCraw*
Dawn McCraw
North Carolina Bar No. 54714
Consumer Justice Law Firm PLC
8095 N. 85th Way
Scottsdale, AZ 85258
T: 602.807.1527
F: (480) 613-7733
E: dmccraw@consumerjustice.com
*Attorney for Plaintiff*
*Marie Szerokman*